**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINCOLN HERBERT** | : | **Civil Action** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT J. REINSTEIN, Dean of the** | : | **No. 02-2671** |
| **Beasley School of Law and Vice President** | : | |
| **of Temple University;** | : | |
| **WILLIAM T. BERGMAN, Chief of** | : | |
| **Temple University Campus Police;** | : | |
| **THE BEASLEY SCHOOL OF LAW; and** | : | |
| **TEMPLE UNIVERSITY** | : | |

**M E M O R A N D U M   &   O R D E R**

**SURRICK, J.**                                                    **January 31,  2003**

        Plaintiff Lincoln Herbert ("Plaintiff") filed the instant action against Robert J. Reinstein

("Reinstein"), Dean of Temple University School of Law, William T. Bergman ("Bergman"),

Chief of the Temple University Campus Police, the James E. Beasley School of Law (the "Law

School"), and Temple University (the "University") (collectively, "Defendants"), alleging claims

under 42 U.S.C. § 1983.  Plaintiff alleges that Defendants prevented him from posting or

distributing pamphlets at various events on University property in violation of his rights under

the First Amendment and the Fourteenth Amendment of the United States Constitution.[1]

Presently before the Court is Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

(Docket No. 2).  For the following reasons, Defendants' Motion to Dismiss Counts II, IV, VI,

and VIII of Plaintiff's Complaint will be granted.

**I.        FACTUAL BACKGROUND**

---

        [1] Pursuant to Plaintiff's unopposed request, by Order dated January 30, 2003, we
dismissed Counts  I, III, V, VII, IX, XI, XIII, XV, XVII, XIX, XXI, and XXIII of Plaintiff's
Complaint which alleged claims under the Pennsylvania Constitution.

Plaintiff alleges the University campus police and/or "Law School" officials prevented him from distributing or posting leaflets on University property during various graduation ceremonies and other events from May of 1998 until May of 2001.  Plaintiff was attempting to distribute photocopies of Philadelphia-area news articles that were critical of the civil rights record of Dean Reinstein.

Specifically, in May 1998, with Law School alumnus Donald Sabatini ("Sabatini"), Plaintiff attempted to distribute leaflets on University property at the Apollo, where the Law School was conducting graduation ceremonies.  (Pl. Compl. ¶¶ 34-35).  The campus police, including chief of police Bergman, ordered Plaintiff and Sabatini not to distribute the leaflets and threatened to arrest them if they continued.  Id. at ¶¶ 35-36.  Plaintiff and Sabatini were forced to distribute their leaflets off the University's property and were unable to effectively reach their target audience at the graduation ceremony.  Id. at ¶ 37.

On May 20, 1999, Plaintiff and Sabatini distributed updated news leaflets about Dean Reinstein's civil rights record on University property outside the graduation ceremonies at the Apollo.  Id. at ¶¶ 50-51.  Uniformed campus police officers and University detectives allegedly approached Plaintiff and Sabatini and examined the leaflets.  Id. at ¶¶ 52-53.  One officer told Plaintiff and Sabatini, "You can't hand these out here."  Id. at ¶ 53.  When Plaintiff explained that he had a constitutional right to distribute the leaflets on campus, the campus police ordered Plaintiff and Sabatini to leave the campus and to distribute the leaflets off campus property.  Id. at ¶¶ 54-55.  Because they feared that they would either be arrested or physically removed from the campus property, Plaintiff and Sabatini left the University campus and continued to distribute the leaflets on a public sidewalk.  Id. at ¶56.  Plaintiff alleges that during the time he was on

2

campus and after he left University property, the campus police used harassing and physically

intimidating police tactics, such as physically surrounding Plaintiff, following Plaintiff and

radioing to other police to tell them Plaintiff's location.  Id. at ¶¶ 57-58, 62-63, 65.  Plaintiff

alleges that because the police surveillance was so visible to anyone whom Plaintiff approached,

Defendants interfered with Plaintiff's ability to distribute leaflets through intimidation.  Id. at

¶70.

On January 27, 2000, the Law School held a lecture and discussion on legal ethics, hosted

by Dean Reinstein.  A number of Law School alumni were invited, including Plaintiff and

Sabatini.  Id. at ¶ 83.  The lecture was held in the Law School's Moot Court Room.  Plaintiff and

Sabatini arrived before the lecture and stood in the lobby distributing leaflets about Dean

Reinstein's civil rights record to those who were entering the lecture.  Id. at ¶¶ 89-90.  Dean

Reinstein and Assistant Law School Dean Mary-Louise Esten ("Esten") observed the distribution

and examined the leaflets.  Id. at ¶¶ 92-94.  After having a conversation with Reinstein and the

campus police, Esten told Plaintiff and Sabatini, "You're not handing those out here."  Id. at ¶¶

94-97.  Plaintiff and Sabatini ceased their distribution, believing that the order not to distribute

was an implied threat that they would be arrested or physically removed from the premises if they

continued.  Id. at ¶ 98.

On April 15, 2000, the Law School held an on campus reception for "Founder's Day" at

Shusterman Hall.  A number of alumni were invited including Plaintiff.  Id. at ¶ 113.  Plaintiff

and Sabatini arrived before the event and again distributed leaflets criticizing Reinstein's civil

rights record to those entering Shusterman Hall.  Id. at ¶¶ 117-119.  While Dean Reinstein

watched, Reinstein's Chief of Staff, Deborah Feldman ("Feldman") told Plaintiff, "You're not

distributing those in here." Id. at ¶¶ 120-121. Feldman stood in the entrance to Shusterman Hall and attempted to prevent the distribution of the flyers through prolonged intimidation and harassment. Id. at ¶122.

On May 18, 2000, Plaintiff and Sabatini once again attempted to distribute leaflets criticizing Dean Reinstein's civil rights record at graduation ceremonies in the Liacouras Center. Id. at ¶¶ 136-137. This time, a group of campus police, including Bergman, surrounded Plaintiff and ordered him not to distribute the pamphlets. Id. at ¶¶ 140-141. When Plaintiff stated that he had a constitutional right to continue, the police physically forced Plaintiff out of the building. Id. at ¶ 142. Plaintiff attempted to continue distribution outside of the building and was again physically removed from campus by the campus police. Id. at ¶¶143-144.

Later that day, Plaintiff returned to the campus and entered the Law School building, away from the graduation ceremonies, with the intent of putting his flyers on the public bulletin boards. Id. at ¶¶150, 155. The Law School police permitted Plaintiff to enter the building and walk around, but prohibited him from posting leaflets, stating that it was against school rules. Id. at ¶¶ 152-154. Plaintiff alleges that other non-law students are permitted to post commercial and non-commercial messages on bulletin boards. Id. at ¶ 157.

In May of 2001, Plaintiff and Sabatini returned to University property on graduation day and attempted to distribute leaflets. Id. at ¶ 172. Police Chief Bergman and his officers threatened arrest and then physically removed Plaintiff and Sabatini from the Liacouras Center lobby. Id. at ¶ 173.

Plaintiff alleges that during all of the above events Defendants did not interfere with other individuals and groups who were disseminating commercial and non-commercial information

that was not critical of Dean Reinstein, even though those individuals and groups were in the same or similar settings at the University.  Id. at ¶¶ 26-27.  Plaintiff also alleges that Dean Reinstein had a practice of telling campus police who was or was not permitted to be present at and/or distribute materials at public events on campus.  Id. at ¶ 30.

Plaintiff commenced the instant action in the Philadelphia County Court of Common Pleas on January 28, 2002.  The case was removed to this Court on May 3, 2002.[2]

## II.    STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6),[3] this Court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them.  Dismissal under Rule 12(b)(6) ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved."  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990) (citing Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988)); See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989).  For this reason, district courts strongly disfavor Rule 12(b)(6) motions.  Melo-Sonics Corp. v. Cropp, 342 F.2d. 856 (3d Cir. 1965); Kuromiya v. U.S., 37 F.Supp.2d 717, 722 (E.D.Pa. 1999).  A court will only dismiss a complaint if "'it is clear that no relief could be

---

[2]In May 1999, Sabatini filed a complaint in this Court alleging a Section 1983 violation for the events that occurred at the May 1998 graduation ceremony.

[3]Rule 12(b)(6) provides that:

> Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

Fed.R.Civ.P. 12(b)(6).

granted under any set of facts that could be proved consistent with the allegations.'" <u>H.J. Inc</u>., 492 U.S. at 249-50 (quoting <u>Hishon v. King & Spalding</u>, 467 U .S. 69, 73 (1984)); <u>Nietzke v. Williams</u>, 490 U.S. 319, 326-327 (1984).   In addition, courts only adjudicate statute of limitations defenses at the dismissal stage when the complaint "facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." <u>Oshiver v. Levin, Fishbein, Sedran, & Berman</u>, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994).   Nevertheless, when deciding a motion to dismiss, a court need not credit a plaintiff's "bald assertions" or "legal conclusions." <u>Morse v. Lower Merion Sch. Dist</u>., 132 F.3d 902, 906 (3d Cir.1997).

## III.    DISCUSSION

Defendants seek a dismissal of Plaintiff's Section 1983 claims related to the May 1998 and May 1999 incidents (Pl. Compl. Counts II, IV, VI, and VIII) contending that those claims are barred by the applicable statute of limitations.   Section 1983 claims are governed by the state's statute of limitations for personal injury lawsuits, which in Pennsylvania is  two years. <u>Sameric Corp. of Delaware, Inc. v. City of Philadelphia</u>, 142 F.3d 582, 5999 (3d Cir. 1998); 42 Pa. Const. Stat. Ann. § 5524.  It is undisputed that Plaintiff commenced the instant action more than two years after the May 1998 and May 1999 incidents occurred.   While these claims would clearly be time-barred because they were brought after the limitations period expired, Plaintiff seeks to recover for these incidents based on the theory of continuing violation.

The continuing violation theory is an "equitable exception to the timely filing requirement," in cases where the defendant's wrongful acts form a continuous pattern of activities that includes at least one act that occurred within the filing period. <u>See</u> <u>Cowell v.</u>

Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Philadelphia Elec. Co., 45

F.3d 744, 754 (3d Cir. 1995)).  The continuing violation theory does not apply when there are

merely repeated "isolated or sporadic" incidents.  Id.

The dichotomy between continuing violations, which require tolling, and "discrete"

prohibited acts, which require the plaintiff to file suit within the limitations period, was discussed

recently by the Supreme Court in the case of Nat'l R.R. Passenger Corp. v. Morgan 122 S.Ct.

2061, 153 L.Ed.2d 106 (2002).  Although that discussion was in the context of employment

discrimination, it is instructive:

> Discrete acts such as termination, failure to promote, denial of
> transfer, or refusal to hire are easy to identify.  Each incident of
> discrimination and each retaliatory adverse employment decision
> constitutes a separate actionable "unlawful employment practice."
> Morgan can only file a charge to cover discrete acts that "occurred"
> within the appropriate time period...
>
> Hostile environment claims are different in kind from discrete acts.
> Their very nature involves repeated conduct ... The "unlawful
> employment practice" therefore cannot be said to occur on any
> particular day.  It occurs over a series of days or perhaps years and,
> in direct contrast to discrete acts, a single act of harassment may
> not be actionable on its own.

Morgan 122 S.Ct. at 2073.  The continuing violation theory "is peculiar to claims that are by their

very nature patterned and durational.  Where the continuing violation theory applies, the illegal

practice complained of has materialized or become cognizable as such only over time."  Estrada

v. Trager, M.D., P.C., Civ. A. No. 01-4669, 2002 WL 31053819, *5 (E.D.Pa. Sept. 10, 2002)

(citing Morgan, 122 S.Ct. at 2073-75).

The Third Circuit has traditionally considered three factors when determining whether an

employer's actions amount to a continuing violation: 1) subject matter (whether the alleged acts

involve the same type of rights violation), 2) frequency (whether the alleged acts are recur and over what time period), and 3) permanence (whether the nature of the violations should trigger the plaintiff's awareness of the need to assert his or her rights and whether the consequences of the act would continue even in the absence of a continuing intent to violate civil rights).  West, 45 F.3d at 755.  Under the third factor, if the civil rights violation was so permanent that the plaintiff was aware or should have been aware that he or she had been subject to unlawful action, the plaintiff must assert his or her rights during the appropriate time period or else those claims are time barred.  Jones v. WDAS FM/AM Radio Station, 74 F. Supp. 2d 455, 463 (E.D. Pa. 1999).

In the instant case, Plaintiff asserts that Defendants' repeated interferences with his ability to distribute leaflets on University property constitute an ongoing, continuous course of conduct that occurred from the 1998 incident until the 2001 incident thus bringing the matter within the perview of the continuing violation theory.  (Pl. Resp. 7).  We disagree.[4]  Even if Defendants had a systematic and ongoing policy to violate the Plaintiff's rights, each one of Defendants' alleged actions against Plaintiff was a discrete event that either did or should have alerted Plaintiff to his need to file suit to protect his rights.  See Estrada, 2002 WL 31053819 at *5.  Plaintiff should have known on each occasion that he was not permitted to distribute leaflets that a separate, discrete, and permanent event occurred that violated his rights.  In fact, it is interesting to note that at the time of the May 1999 incident, Plaintiff specifically complained to Defendants that

---

[4]We also reject Defendants' argument that the continuing violation theory does not apply to Section 1983 claims. While the continuing violation theory is most frequently used in employment discrimination suits, the Third Circuit has applied the doctrine to other contexts, including Section 1983 claims.  See, e.g., Cowell, 263 F.3d at 292; Sameric, 142 F.3d. at 599.

they were violating his constitutional rights. (Pl. Compl. ¶¶ 54-55).  It is also interesting to note that Sabatini, who distributed leaflets with Plaintiff, filed suit in this Court in May of 1999, alleging that his rights had been violated by Defendants.  Plaintiff waited until January of 2002 to file his complaint.  By that time the limitations period for his 1998 and 1999 claims had expired. The continuing violation theory is to be narrowly applied and is not designed to "excuse plaintiffs from diligently pursuing their claims."  Lott v. Cheney University of Pennsylvania, Civ. A. No. 00-5283, 2001 WL 503394, *3 (E.D.Pa. May 11, 2001) (dismissing a Section 1983 claim on a 12(b)(6) motion because the repeated acts by the school against the plaintiff were isolated and therefore did not plead a continuing violation).

Because the continuing violation theory is "premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his rights have been violated, it 'will not overcome the relevant statute of limitations if prior events should have alerted a reasonable person to act.'"  Id. at *4.  Each time that Defendants refused to permit Plaintiff to distribute leaflets, a reasonable person would have been alerted that he needed to act in order to preserve his claim.  We are satisfied that the continuing violation theory does not apply in this case.  Accordingly, we will dismiss as time-barred Plaintiff's claims that allege incidents that occurred more than two years before Plaintiff commenced this suit.

An appropriate Order follows.

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINCOLN HERBERT** | : | **Civil Action** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT J. REINSTEIN, Dean of the** | : | **No. 02-2671** |
| **Beasley School of Law and Vice President** | : | |
| **of Temple University;** | : | |
| | | |
| **WILLIAM T. BERGMAN, Chief of** | : | |
| **Temple University Campus Police;** | : | |
| **THE BEASLEY SCHOOL OF LAW; and** | : | |
| **TEMPLE UNIVERSITY** | : | |

## ORDER

AND NOW, this 31st day of January, 2003, upon consideration of Defendants'

Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) (Docket No. 2), it is ORDERED that

Defendants' Motion is GRANTED as to Counts II, IV, VI, and VIII of Plaintiff's Complaint and

Counts II, IV, VI, and VIII are DISMISSED with prejudice.


AND IT IS SO ORDERED.



_____

R. Barclay Surrick, Judge